## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Meron ABRAHALEY TESFAMIKAEL;

      *Petitioners*,

v.

Thomas DECKER, in his official capacity as Disrict Director of New York, Immigration and Customs Enforcement; Chad WOLF in his official capacity as Acting Secretary of Homeland Security.

      *Respondents*.

Case No. _____

**PETITION FOR**
**WRIT OF HABEAS CORPUS**

## <u>INTRODUCTION</u>

The Petitioner, Meron Abrahaley Tesfamikael, brings this petition in a bid to preserve his right to due process and to prevent his imprisonment, torture and death at the hands of Eritrean authorities. Respondents stand poised to remove the Petitioner to Eritrea on March 11, 2020. Yet this removal would foreclose Mr. Abrahaley Tesfamikael's right to seek judicial review of his removal order, which was issued in an error-ridden and homophobic opinion by the sole immigration judge in the United States to have denied 100% of the asylum claims he has ever adjudicated. Mr. Abrahaley Tesfamikael has filed a motion to reopen his proceedings with the Board of Immigration Appeals. Although that motion remains pending, Mr. Abrahaley Tesfamikael faces deportation before he is able to obtain full and fair review of his claims in a federal Court of Appeals. Because he faces all but certain imprisonment and torture in Eritrea, deportation before such review is tantamount to no review at all. To protect his constitutional and statutory rights, and to ensure that he is still alive if and when those rights are vindicated, Mr.

Abrahaley Tesfamikael now seeks an order from this Court staying his removal until his motion to reopen is adjudicated by the Board of Immigration Appeals.

## PARTIES

1.      Petitioner Meron Abrahaley Tesfamikael is an asylum seeker from Eritrea.

2.      Respondent Thomas Decker is named in his official capacity as the Field Office Director of the New York Field Office for ICE within the United States Department of Homeland Security. In this capacity, he is also responsible for the administration of immigration laws and the execution of detention and removal determinations and is a legal custodian of Petitioner. Respondent Decker's address is New York ICE Field Office Director, 26 Federal Plaza, 7th Floor, New York, New York 10278.

3.      Respondent Chad Wolf is named in his official capacity as the Acting Secretary of Homeland Security in the United States Department of Homeland Security.  In this capacity, he is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to remove the Petitioner; and as such is a legal custodian of the Petitioner. Respondent McAleenan's address is U.S. Department of Homeland Security, 800 K Street N.W. #1000, Washington, District of Columbia 20528.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241 (habeas); 28 U.S.C. § 1331 (federal question); and Article I, § 9, cl. 2 of the United States Constitution. This Court has authority to grant declaratory and injunctive relief. 28 U.S.C. §§ 2201, 2202. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

5.     Mr. Abrahaley Tesfamikael is in custody for the purposes of habeas jurisdiction both because he is detained and because he "faces imminent deportation, which necessarily involves a period of detention—and that he must comply, absent judicial intervention, with the Government's orders 'at any time and without a moment's notice.'" *Ragbir v. Homan*, 923 F.3d 53, 76 (2d Cir. 2019), (citing *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., California*, 411 U.S. 345, 351 (1973)); *see also Simmonds v. I.N.S.,* 326 F.3d 351, 354 (2d Cir. 2003), petition for cert. pending (filed Feb. 21, 2020).

## VENUE

6.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this action occurred in the district, including the decision by the ICE Field Office headed by Respondent Decker and located in this District to remove the Petitioner on March 11, 2020.

## EXHAUSTION

7.     No exhaustion requirement applies to the constitutional claims raised in this Petition, because no administrative forum exists to entertain Mr. Abrahaley Tesfamikael's constitutional challenges. Neither an immigration judge nor the Board of Immigration Appeals can rule on the constitutional nature of petitioners' claims. *See In re C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) (immigration judges and BIA cannot decide constitutional questions).

8.     Mr. Abrahaley Tesfamikael faces imminent risk of torture and death if removed to Eritrea. tomorrow. The Supreme Court has recognized that exhaustion is not appropriate where plaintiff "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

9.     Finally, Mr. Abrahaley Tesfamikael has also exhausted the only administrative remedy available to him, which is a motion for an emergency stay filed with the Board of Immigration Appeals. He filed a motion for a stay on March 10, 2020 yet faces imminent removal tomorrow.

## LEGAL BACKGROUND

10.     Individuals ordered removed from the United States are entitled, by statute, to file a motion to reopen that seeks to vacate that removal order. 8 U.S.C. § 1229a(c)(7); *see also* 8 C.F.R. §§ 1003.2(c), 1003.23(b)(3). Such a motion can be based on changed country conditions, 8 U.S.C. § 1229a(c)(7)(2); material new evidence that was previously unavailable, *id.* at 1229a(c)(7)(B); exceptional circumstances causing one to miss court, *id.* at 1229a(b)(5)(c); or lack of notice of the court appearance, *id.* Individuals can also ask that the immigration court or Board of Immigration Appeals exercise its *sua sponte* authority to reopen proceedings. 8 C.F.R. § 1003.2(a); 8 C.F.R. § 1003.23(b)(1).

11.     If the underlying removal order was issued by an Immigration Judge ("IJ") and not appealed, a motion to reopen is filed with the IJ. 8 C.F.R. § 1003.23(b)(1). If the IJ denies the motion, the individual can appeal to the Board of Immigration Appeals ("BIA"). 8 C.F.R. §§ 1003.1(b)(3), 1003.38(a). If the BIA denies the motion, the individual can file a petition for review of that denial with the federal court of appeals. *See Mata v. Lnych*, 135 S.Ct. 2150, 2153 (2015).

12.     The Supreme Court has called the right to move to reopen proceedings as "an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008)). The Second Circuit has likewise called its review of motions to reopen through the Petition for

Review process "meaningful" and no less thorough than habeas review. *Luna v. Holder*, 637 F.3d 85, 98 (2d Cir. 2011).

13.      With limited exceptions, the filing of a motion to reopen does not stay the execution of a removal order. Yet it is often crucial to the motion to reopen process that the movant remain in the U.S. during the pendency of the adjudicatory process. First, asylum seekers such as Mr. Abrahaley Tesfamikael seek to reopen their case in order  to avoid the very irreparable harm and persecution that deportation—even temporary deportation—would inflict. Since the first moment Mr. Abrahaley Tesfamikael arrived on U.S. soil, he has stated that he would be imprisoned and possibly killed upon return to Eritrea. Second, it is much more difficult to pursue a motion to reopen from outside the U.S., because it can be difficult to communicate with one's attorney and obtain and provide evidence, particularly if in hiding due to the threat of persecution. This risk is. Particularly acute in cases where, like Mr. Abrahaley Tesfamikael's, removal will almost certainly result in imprisonment. Third, the Government does not have a consistent and reliable return policy for people who are removed and then win their petitions for review. In Mr. Abrahaley Tesfamikael's case, this is compounded by the near impossibility of a young man lawfully departing Eritrea, as doing so requires an exit permit issued by the government.

14.      Separately, individuals in removal proceedings also have a right of direct appeal from an immigration judge's decision. 8 C.F.R. § 1003.38(a). Appeals must be filed within 30 days of the decision. *Id.* at (b). The BIA has authority to accept appeals filed more than 30 days after a decision under its self-certification process. 8 C.F.R. § 1003.1(c). The Second Circuit has held that the 30-day deadline is not jurisdictional, but rather a "claim-processing rule" which can be equitably tolled. *Attipoe v. Barr*, 945 F.3d 76, 82 (2d Cir. 2019). Filing a motion to the BIA

seeking leave to file a direct appeal after the 30-day deadline does not carry an automatic stay of removal.

15.     To remain in the U.S. through the pendency of a motion to reopen or motion to accept a late-filed appeal, individuals can file a motion to stay removal. 8 C.F.R. §§ 1003.2(f); 1003.23(b)(1)(v). Once a motion to reopen has been adjudicated by the BIA, movants can seek a stay from the Court of Appeals. But prior to the BIA's adjudication of the motion to reopen, it is not possible to seek a stay of removal from the Court of Appeals because jurisdiction does not yet lie with the Court of Appeals. 8 U.S.C. § 1252(a)(1) (limiting review to final orders).

16.     Despite the tremendous, life and death significance of its decision-making on motions for stays of removal, the BIA has no publicly available guidance regarding the standard that it and immigration judges use in adjudicating stay motions and does not publish decisions on stay motions adjudicated separately from underlying relief motions. This prevents litigants from adequately preparing or contesting adverse rulings. The stay process also suffers from an egregious lack of standardization and consistency. In recent FOIA litigation in this Circuit, the Executive Office of Immigration Review (EOIR) confirmed that it has <u>no</u> guidance or training materials for BIA members on the adjudication of stay motions in its possession. In other words, the agency does not appear to engage in <u>any form of training</u> of adjudicators on the legal standards governing stay motions, if any such standards even exist. This lack of guidance is consistent with the BIA's own manual, which cites no standards or factors on which the BIA relies in adjudicating stay motions.

17.     The BIA also refuses to adjudicate motions to stay removal until removal is literally hours away. Yet ICE refuses to inform counsel for immigration detainees, and often detainees themselves, *when* removal will occur. Nor can the BIA guarantee that it will adjudicate a motion

to stay at all prior to removal. As a result, individuals may be deported prior to review of their stay motion. It also contributes to a further fundamental flaw in the motion to reopen and stay process: the BIA's decision-making is extremely hurried and does not leave time for adequate review of voluminous records or evidence. This invites arbitrary decision making and, indeed, stay requests are regularly denied even in cases where the underlying motion to reopen may ultimately be granted. Also, because ICE is not transparent about removal dates, attorneys are often forced by the sudden threat of imminent removal to file motions within hours and without copies of important and necessary documents such as the court file.

18.    BIA stay decisions are not published or publicly available and contain no individualized reasoning or analysis. Rather, the decisions are boilerplate and pre-written for the adjudicator.

## SPECIFIC FACTS

19.    The petitioner, Meron Abrahaley Tesfamikael, is a 23-year-old citizen of Eritrea who sought asylum at the U.S. border on October 10, 2018. He is gay. He served in the mandatory Eritrean National Service from 2015 until he decided to flee the country without authorization in June 2017.

### *ERITREA*

20.    Eritrea is one of the most repressive countries in the world. The United Nations has decried the Eritrean government's treatment of its civilian population, which it has found includes "enslavement, imprisonment, enforced disappearance, torture, other inhumane acts, persecution, rape and murder."[1]

---

[1] United Nations Human Rights Council, *Report of the commission of inquiry on human rights in Eritrea*, A/HRC/32/47, May 9, 2016 (hereinafter "UN May 9, 2016 Report") at ¶ 35.

21.    All Eritreans are required to perform National Service, which can be of indefinite duration. Conscripts in the National Service face poor health and sanitary conditions and lack of adequate water, food, and compensation.

22.    Eritreans are prohibited from leaving the country without authorization, and the government has a policy of shooting-to-kill anyone caught attempting to escape the country. Many Eritreans, particularly men of military age or who face mandatory reserve duty after the completion of their national service, cannot qualify for exit visas.

23.    Although National Service can be indefinite, it is also a crime to desert or fail to complete one's service. Both leaving the country without a valid exit visa and deserting the National Service are crimes. Repatriated refugees face imprisonment upon arrival in Eritrea as a result of either or both offenses.

24.    Detention in Eritrea is very likely to lead to torture and enforced disappearance. The United Nations has called Eritrean officials' use of torture against individuals detained in civilian or military detention centers custodial settings "widespread," "systematic," and "methodical."[2] The instance of rape of men and women in detention centers is "significant."[3] Human Rights Watch describes the punishments that accompany imprisonment for individuals forcibly returned to Eritrea as "terrible, including torture and death."[4]

25.    Communication with detainees in Eritrean jails is all but impossible, and often occurs only through bribery of jail officials.

---

[2] UN May 9, 2016 Report at ¶ 39; UN May 9, 2016 Report at ¶ 33-36; United Nations Human Rights Council, *Detailed findings of the commission of inquiry on human rights in Eritrea*, A/HRC/32/CRP.1, June 8, 2016 (hereinafter "UN June 8, 2016 Report") at at ¶ 102.
[3] UN May 9, 2016 Report at ¶ 90
[4] Human Rights Watch, *Service for Life: State Repression and Indefinite Conscription in Eritrea* (2009) at p. 65, available at http://www.ehrea.org/er0.pdf.

26.     Eritrea also criminalizes homosexual activity. The penalty for same-sex sexual activity is 5 to 7 years in prison. Although extreme stigma around homosexuality in Eritrea makes information difficult to obtain, there have been reports of government round-ups of Eritreans suspected of homosexuality and severe abuse against gay people in the armed forces. Individuals known to be homosexual face risks upon reentry to Eritrea.

### MR. ABRAHALEY TESFAMIKAEL

27.     Mr. Abrahaley Tesfamikael will be immediately imprisoned upon arrival in Eritrea and faces a significant risk of torture, rape and death thereafter.

28.     After recognizing his homosexuality as a teenager, Mr. Abrahaley Tesfamikael faced persistent persecution in Eritrea as a result of his sexual orientation.

29.     This persecution was most acute during his period of national service. He was repeatedly physically attacked and threatened by other members of the National Service and by his superiors who used homosexual slurs and maligned him for his perceived sexuality. This included being surrounded, beaten with sticks and pelted with rocks, and tied up and suspended from a tree. As a result of this mistreatment, Mr. Abrahaley Tesfamikael continues to suffer from chronic pain in his arm and shoulder.

30.     In April 2017, Mr. Abrahaley Tesfamikael and his romantic partner—also a male—were caught engaging in a sexual act and pursued and shot at by police. Mr. Abrahaley Tesfamikael escaped and went into hiding, but his partner did not. Mr. Abrahaley Tesfamikael has had no knowledge of his partner's whereabouts since that time.

31.     Shortly thereafter, in June 2017, Mr. Abrahaley Tesfamikael decided to flee Eritrea. He did so without authorization from the government and without completing his National Service.

32.     On October 10, 2018, Mr. Abrahaley Tesfamikael sought asylum at a U.S. port of entry. He was detained in Jena, Louisiana and appeared for removal proceedings before Immigration Judge Grady Crooks. Mr. Abrahaley Tesfamikael obtained representation for his proceedings before the immigration court. On March 5, 2019, Immigration Judge Crooks denied his application for asylum. The denial was served on his counsel by mail.

33.     The immigration judge who presided over Mr. Abrahaley Tesfamikael's removal proceedings has presided over more than 200 asylum cases since becoming an immigration judge in 2018. In that time, he has never granted asylum. He is the only immigration judge nationwide with a 100% denial rate.

34.     In the cover page to its decision denying Mr. Abrahaley Tesfamikael's asylum, the immigration court in Jena, Louisiana did not mark the box indicating that this was a final decision that had to be appealed to the BIA within 30 days. Rather, the cover page was simply marked "other" with no information regarding appeal. Mr. Abrahaley Tesfamikael's counsel also did not advise him of how to file an appeal, the deadline to do so, or the consequences of failing to do so. Mr. Abrahaley Tesfamikael was unable to pay for further representation by private counsel and was unable to access *pro bono* counsel while detained in Jena, Louisiana, an area that is drastically under-served by legal service providers. In addition, Mr. Abrahaley Tesfamikael had not independent means to learn of the appeals process because he speaks only Tigrinya and has suffered from depression, anxiety, stress, and suicidal feelings while detained as a result of his trauma history. As a result, Mr. Abrahaley Tesfamikael did not file a timely appeal.

35.     In or around December 2019, Mr. Abrahaley Tesfamikael was transferred to Hudson County Correctional Facility, a county jail in which ICE detainees are held under the direction and control of ICE's New York Field Office in Manhattan.

36.     At Hudson, he had his first opportunity to meet with *pro bono* counsel who advised him of his right to appeal; the 30-day deadline that he had missed; and the process to file a motion for the BIA to accept a late appeal. He filed a *pro se* notice of appeal to the BIA in January 2020. It was denied and his appeal summarily dismissed by the BIA on February 24, 2020.

37.     In February 2020, Mr. Abrahaley Tesfamikael was finally able to obtain new representation, by *pro bono* counsel from the New York Legal Assistance Group (NYLAG). Mr. Abrahaley Tesfamikael indicated to counsel that an officer had told him he faced removal on March 11, 2020. His counsel was unable to confirm this information with ICE. But on March 6, 2020, his counsel received confirmation through an elected official's office that Mr. Abrahaley Tesfamikael would indeed be removed on March 11. This information was provided to the elected official's staff by the ICE New York Field Office.

38.     On information and belief, Mr. Abrahaley Tesfamikael will be removed by officers from ICE's New York Field Office and, based on a search of commercial flights, will likely be on the only flight to Eritrea from the New York area this week which departs from John F. Kennedy Airport on March 11.

39.     Also on March 6, Mr. Abrahaley Tesfamikael's immigration counsel from NYLAG confirmed in a telephone call with the clerk's office for the BIA that jurisdiction over his motion to reopen lay with the BIA because Mr. Abrahaley Tesfamikael had filed a motion for a late appeal to the BIA.

40.     Mr. Abrahaley Tesfamikael's counsel then acted with extreme urgency to prepare and file with the BIA a motion to reopen his removal proceedings, a new and fully briefed motion to accept a late-filed appeal or reconsider the previous denial, and a motion for a stay of removal. His counsel filed all of these with the BIA on March 10.

41.     Mr. Abrahaley Tesfamikael's motion argues that his case should be reopened both under the BIA's *sua sponte* authority and because Mr. Abrahaley Tesfamikael's previous counsel was ineffective and failed to present material evidence of Mr. Abrahaley Tesfamikael's claim, including evidence in his possession or otherwise obtainable, thereby depriving Mr. Abrahaley Tesfamikael of his right to due process. It argues in the alternative that the BIA should grant Mr. Abrahaley Tesfamikael's motion to late-file an appeal, both because he merits equitable tolling of the deadline and because his case presents extraordinary circumstances justifying the BIA's use of its self-certification authority.

42.     On March 10, the BIA Stay Unit confirmed receipt of the stay motion by phone.

43.     Also on March 10, Mr. Abrahaley Tesfamikael also advised officers with the ICE New York Field Office that he had sought an emergency stay of removal.

44.     Mr. Abrahaley Tesfamikael fears that he will be imprisoned, harmed and likely killed upon his removal to Eritrea. Because he would face imprisonment and torture immediately upon arrival,  he would be unable to remain in contact with counsel or to pursue his motion to reopen once removed from the U.S.

### CLAIMS FOR RELIEF

### COUNT I
### IMMIGRATION AND NATIONALITY ACT
### AND ACCOMPANYING REGULATIONS

45. The Respondents' removal of Mr. Abrahaley Tesfamikael will violate the Immigration and Nationality Act and the applicable regulations.

## COUNT II
## ADMINISTRATIVE PROCEDURE ACT

46. The Respondents' denial of Mr. Abrahaley Tesfamikael's stay request will violate the Administrative Procedures Act.

## COUNT III
## DUE PROCESS

47.    The Respondents' removal of Mr. Abrahaley Tesfamikael from the United States will violate the Due Process Clause.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully requests that this Court:

1)    Assume jurisdiction over this matter;

2)    Declare that Respondents' acts and omissions complained of herein violate the Due Process Clause, the Immigration and Nationality Act and accompanying regulations, and the Administrative Procedure Act;

3)    Enjoin the Respondents from removing Petitioner Mr. Abrahaley Tesfamikael from the United States and from the jurisdiction of the ICE New York Field Office until the Board of Immigration Appeals has adjudicated his motion to reopen;

4)    Award Petitioners their costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

5)    Grant such further relief as the Court deems just and proper.

Dated: March 10, 2020

Paige Austin
Make the Road New York
301 Grove St.
Brooklyn, NY 11237
Tel. (718) 418-7690
Paige.Austin@maketheroadny.org